# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

SHANEEKA ANDRANETTE MARTIN                                    PLAINTIFF

V.                              No. 4:22-CV-01054-BSM-JTR

KILOLO KIJAKAZI, Acting Commissioner,
Social Security Administration                                DEFENDANT

## RECOMMENDED DISPOSITION

This Recommended Disposition ("Recommendation") has been sent to United States District Judge Brian S. Miller. Either party may file written objections to this Recommendation. If objections are filed, they should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within 14 days of this Recommendation. If no objections are filed, Judge Miller can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

## I.   Introduction

On August 31, 2020, Plaintiff Shaneeka Andranette Martin ("Martin") filed applications for disability insurance benefits and supplemental security income. (Tr. at 14). In the applications, she alleged disability beginning on February 28, 2018.[1]

---

[1] Martin subsequently amended her alleged onset date to December 28, 2019. *Id*.

*Id.*

In a written decision dated March 16, 2022, an Administrative Law Judge ("ALJ") denied Martin's applications. (Tr. at 11–26). The Appeals Council denied Martin's request for review on September 6, 2022. (Tr. at 1–5). The ALJ's decision now stands as the final decision of the Commissioner, and Martin has requested judicial review.

For the reasons stated below, the Court concludes that the Commissioner's decision should be affirmed.

## II.     The Commissioner's Decision

Martin was 35 years old on the amended alleged onset date, and she has a high school education. (Tr. at 24). She has past relevant work as a jailer and machine operator. *Id.*

The ALJ found that Martin had not engaged in substantial gainful activity since the amended alleged onset date of December 28, 2019.[2] (Tr. at 16–18). At Step Two, the ALJ determined that Martin has the following severe impairments: left shoulder rotator cuff tear status post repair, fibromyalgia syndrome, right hip

---

[2] The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)–(g), 416.920(a)–(g).

bursitis, obesity, and cervical spine degenerative disease. *Id*.

At Step Three, the ALJ determined that Martin's impairment did not meet or equal a listed impairment.[3] (Tr. at 18–19). Before proceeding to Step Four, the ALJ determined that Martin had the residual functional capacity ("RFC") to perform work at the light exertional level, with restrictions: (1) no left upper extremity overhead reaching; (2) no more than occasional left handling/fingering duties; and (3) no lower extremity foot control operation. (Tr. at 19).

At Step Four, the ALJ utilized testimony from a Vocational Expert ("VE") to determine that Martin was unable to perform any of her past relevant work. (Tr. at 24–26). Further relying upon VE testimony, the ALJ found, based on Martin's age, education, work experience and RFC, that there are jobs in the national economy that Martin can perform, including positions such as furniture rental clerk and counter clerk. *Id*. Therefore, the ALJ concluded that Martin was not disabled. *Id*.

### III.   Discussion

A.   Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see*

---

[3] 20 C.F.R. Part 404, Subpt. P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

*also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> Our review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision. Reversal is not warranted, however, merely because substantial evidence would have supported an opposite decision.

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

### B.  Martin's Arguments on Appeal

Martin, who appears *pro se* in this matter, submitted a short letter brief contending that she should have been found disabled. (Doc. No. 12). The Court construes this brief as a claim that the evidence supporting the ALJ's decision was less than substantial.

In his decision, the ALJ thoroughly discussed Martin's pain, the objective evidence, Martin's treatment, and her alleged functional difficulties. (Tr. at 14–20). Martin alleged she had residual neck, shoulder, knee, and hip pain.[4] However, a cervical spine x-ray showed nothing more than degenerative disc disease. (Tr. at 21, 664). Although Martin had undergone two prior left shoulder surgeries, bilateral shoulder x-rays from October 2020 were unremarkable. (Tr. at 19–20, 41–43, 662–663). March 2020 x-rays of Martin's knees were "normal."[5] (Tr. at 608–609). A September 2020 examination of Martin's right hip showed full range of motion with no radiating pain. (Tr. at 622). Other clinical examinations by Martin's PCP during the relevant time-period showed grossly intact neurological sensation and full muscle strength in the extremities. (Tr. at 481, 600, 667). Although Martin claims that fibromyalgia was disabling, rheumatology markers were grossly normal at an October 2021 rheumatology appointment. (Tr. at 22, 844).

Treatment for Martin's pain was conservative, with medication management

---

[4] Along with her brief, Martin submitted a cervical spine MRI report, dated January 23, 2023. (Doc. No. 12 at 4–5). This report showed some disc desiccation but was otherwise a negative examination. The report does not show a disabling medical condition, and in any event, records submitted to the Court after the administrative record is closed are normally not considered, unless good cause for failing to incorporate the evidence into the record is shown. *See* 42 U.S.C. § 405(g); *Hardy v. Chater*, 64 F.3d 405, 408 (8th Cir. 1995). Martin has not made that showing.

[5] Normal clinical findings may support an ALJ's decision to deny benefits. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001).

and steroid injections.[6]  (Tr. at 437, 481, 599–622). Her doctors suggested a strength program and home exercises; surgery was not recommended.[7]  (Tr. at 20, 481). Her PCP counseled on a healthy lifestyle including better eating habits and weight loss. (Tr. at 614).

At multiple clinic appointments with her PCP in 2020, Martin explained that she had been doing well and experienced symptom control from pain medication. (Tr. at 599–621, 658–665). Martin rated her pain as 4 out of 10 on most days. (Tr. at 658). In January 2020, Martin's request for a handicap car tag was declined by her doctor. (Tr. at 599–600).

Martin could perform some daily activities. She said he could provide care for her child, drive, shop in stores, prepare simple meals, and perform some household chores.[8]  (Tr. at 45–46, 338–340). The ALJ properly concluded that these activities were inconsistent with allegations of disabling pain. (Tr. at 22–24).

---

[6] In 2021, Martin underwent placement of a permanent suprascapular peripheral nerve stimulator, which had to be removed because the sutures holding it together came apart. (Tr. at 792–793, 844–845). After that, conservative medication management was continued. *Id.*

[7] The need for only conservative treatment contradicts allegations of disabling conditions. *Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993).

[8] Such daily activities undermine her claims of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003).

The ALJ considered the medical opinions in the record.[9]  Jordan Longnecker, Martin's primary care nurse practitioner, filled out a checkbox form in September 2020, stating that Martin could not even perform sedentary exertional work.[10]  (Tr. at 563–573). The ALJ found this to be unpersuasive, citing generally normal examination findings and the conservative course of care. (Tr. at 23). He also cited to Martin's ability to perform daily activities when he discounted the opinion. *Id*. This reasoning sufficed.

On September 16, 2020, Martin's PCP stated in a written opinion that Martin would miss more than one day of work per week due to migraines, which Martin treated with over-the-counter medications. (Tr. at 627–628). The ALJ found this unpersuasive (Tr. at 23): Martin did not regularly complain of migraines to her PCP and she stated she was doing well at most of her appointments. She did not seek out specialized treatment for migraines.

Finally, the ALJ found an opinion from Martin's rheumatologist partly

---

[9] ALJs are required to discern whether opinion evidence is persuasive, based on: (1) supportability; (2) consistency with the evidence; (3) relationship with the claimant [which includes; (i) length of treatment relationship; (ii) frequency of examinations; (iii) purpose of the treatment relationship; (iv) extent of the treatment relationship; and (v) examining relationship]; (4) provider specialization; and (5) any other important factors. See 20 C.F.R. § 404, 1520c(a)–(c)(2017). An opinion is more persuasive if it is consistent with and supported by the medical evidence as a whole. 20 C.F.R. § 416.920c(c)(1-2) (2017); *Bonnett v Kijakazi*, 859 Fed. Appx. 19 (8th Cir. 2021*); Grindley v. Kijakazi*, 9 F.4th 622, 630 (8th Cir. 2021) An ALJ must give good reasons for his findings about an opinion's persuasiveness. *Id.*

[10] The ALJ misstated his name as Longneck. (Tr. at 23, 598).

persuasive. *Id*. In October 2020, the doctor opined that Martin could lift, carry, and handle no more than 25–30 pounds (consistent with the RFC for light exertional work) but would be limited in standing and walking to no more than 30 minutes. (Tr. at 649). He also said that Martin had no limitations on hearing, speaking, or traveling.

The ALJ wrote that the doctor's restrictions on walking and standing were not consistent with the record evidence, which was accurate. (Tr. at 23). He cited to a PCP note in January 2020, which showed that Martin reported no problems with walking and only occasional leg pain. *Id*. The ALJ properly evaluated the medical opinions. Finally, the RFC accounted for all of Martin's credible limitations indicated by the opinion evidence and the remaining medical records.[11] The Court finds no reason to disturb the ALJ's decision.

## IV.   Conclusion

There is substantial evidence to support the Commissioner's decision that Martin was not disabled. The ALJ properly evaluated the medical opinions, and the RFC incorporated all of Martin's limitations.

---

[11] A claimant's RFC represents the most she can do despite the combined effects of all of her credible limitations and must be based on all credible evidence. *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011). In determining the claimant's RFC, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments. *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996). The ALJ fully considered the benign medical record, the conservative treatment course, and Martin's daily activities (among other things) when formulating the RFC.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision be

AFFIRMED and that judgment be entered for the Defendant.

DATED this 24th day of October, 2023.

_____

UNITED STATES MAGISTRATE JUDGE